IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

CHARLES F. HARSH,

    Plaintiff,

v.

GEICO GENERAL INSURANCE
COMPANY,

    Defendant.

Civil Action 2:17-cv-00814
Chief Judge Edmund A. Sargus Jr.
Magistrate Judge Jolson

## OPINION AND ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment (ECF No. 54), Plaintiff's Memorandum in Opposition to Defendant's Motion (ECF No. 63), and Defendant's Reply in Support of its Motion (ECF No. 68). For the reasons that follow, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion.

### I.

Plaintiff Charles Harsh, a plumber by trade, is the owner of numerous residential and commercial properties in Columbus, Ohio. In 2012, Plaintiff hired Marc Kraft to perform general maintenance work on his properties. Typically, Plaintiff drove Kraft to the property where Kraft worked for the day.

On November 8, 2012, Plaintiff Harsh loaned Kraft his truck. That evening, Kraft became severely intoxicated and caused an accident killing a young mother, Heidi Hecker, and injuring her 10-month old child and her partner, Brad Weaver. Kraft made a statement to the Ohio State Highway Patrol immediately following the accident, wherein he stated that he had

permission to drive Plaintiff's vehicle at the time of the accident. Kraft is currently serving a 29-year sentence for vehicular homicide as a result of the accident.

Plaintiff's truck, driven by Kraft on November 8, 2012, was insured by Defendant GEICO Insurance, Policy Number 4124-04-60-71 ("the Policy"). The Policy included bodily injury liability limits per person/per occurrence of $500,000.00. (Policy, ECF No. 3-1.) An insured, as identified under the Policy, includes the policyholder, the policyholder's relatives, and any other person who is using the insured auto with the policyholder's permission, as long as the use is within the scope of that permission. Defendant's Claims Attorney testified that, because of these circumstances, a drunk driver causing the death of a young mother, he set the hold reserve on the entire $500,000 immediately. (Heiten Dep. at 19, ECF No. 55-1.)

On February 8, 2013, GEICO's hired counsel conducted an examination under oath of Plaintiff Harsh. (Exam. Under Oath Tr. at 6, ECF No. 49-1) ("[GEICO] ha[s] retained my services to assist them in investigating the automobile accident that took place November 8, 2012; [a]nd as I understand it right now, you're not making any claims against GEICO . . . but GEICO has been put on notice that the people involved in the accident involving Mr. Kraft have made claims; do you understand that?"). In the examination, Plaintiff was asked about giving permission to Kraft to drive his truck. Plaintiff testified that he gave Kraft permission to drive the truck home from work and back to work the following day, but did not specify any other parameters about the use of the truck. That is, Plaintiff did not specifically inform Kraft that he was giving him the truck to drive only home and back to work. When asked whether Kraft expressed understanding of the permission that was being given, Plaintiff testified: "I don't remember [Kraft] saying anything. I mean, I just – you know – it was assumed, I guess, that he could drive it home." *Id.* at 85. Plaintiff answered no to the questions about whether Kraft

mentioned that "he might want to take a side trip or try some other detour," and whether it had "entered [Plaintiff's] thoughts" that Kraft may take a side trip. *Id.* at 82. When asked whether any side trip "[w]ould have been against [his] permission," Plaintiff answered "yes." *Id.* at 83.

On February 11, 2013, the Weavers, along with Ms. Hecker's estate ("the Weaver Plaintiffs"), brought suit in Delaware County, Ohio (the "Underlying Lawsuit") against Plaintiff for negligence under the theories of negligent entrustment, negligent hiring, and negligent retention, and against Kraft for negligence.

On April 5, 2013, GEICO filed a separate action for declaratory judgment challenging its obligation to Kraft based on its assessment that he may not qualify as a permissive user under the Policy. GEICO opposed the Weaver Plaintiffs' Motion to Transfer and Consolidate the declaratory action with the Underlying Lawsuit.

On October 14, 2013, Plaintiff was deposed in the Underlying Lawsuit, and testified that he granted Kraft permission to drive his tuck, which included running errands. The state court determined that Kraft was a permissive user and therefore insured under the Policy. GEICO then retained separate counsel to defend Kraft in the Underlying Lawsuit.

On October 31, 2013, GEICO Claims Attorney reviewed the summaries of the deposition of Plaintiff and Kraft taken in the Underlying Lawsuit and stated that "the permissive use argument is probably gone." (Ex. K, GEICO Internal Claim Notes, ECF No. 63-1 at 84.)

Subsequently, GEICO and the Weaver Plaintiffs both moved for summary judgment in the Underlying Lawsuit, and on January 14, 2014, the trial court granted the Weaver Plaintiffs' motion and denied GEICO's motion. GEICO appealed and summary judgment for the Weaver Plaintiffs was affirmed.

On March 5, 2014, GEICO offered its policy limits to the Weaver Plaintiffs. The Weaver Plaintiffs rejected the offer in a letter from their attorney stating, in relevant part:

> This letter is written in response to your March 5, 2014 letter, in which GEICO offered its $500,000 liability policy limits to settle the [Weaver] Plaintiffs' claims and fully release Charles Harsh and Marc C. Kraft. At this time, the untimely offer of GEICO's policy limits cannot be accepted due to the continuous bad faith actions of GEICO throughout this matter, which affects not only its own insured and covered driver, but also the [Weaver] Plaintiffs. This is a clear liability case. This case was filed on February 11, 2013. Instead of reasonably investigating the critical facts regarding coverage and extending a timely offer of its policy limits, GEICO has engaged in a pattern of unjustified delay . . . .
>
> GEICO failed to make a good faith effort to investigate all aspects of this case before filing its declaratory judgment. In its myopic effort to escape liability, GEICO has blatantly ignored the fact that Mr. Kraft had permission to use Harsh's vehicle at the time of the accident. Permission is not and never has been a legitimate issue in this matter. The damages in this clear liability case far exceed GEICO's $500,000 liability limits. Yet, from day one, GEICO has pursued its declaratory judgment with no regard for the facts or the rights of its insured and insured driver.
>
> If GEICO made a good faith effort to investigate all aspects of this case *before* filing its declaratory judgment, the case would not have been delayed. The case would have resolved in the best interest of all parties, including GEICO's own insureds, who now risk personal exposure beyond the policy limits and punitive damages.
>
> GEICO's actions have adversely affected the [Weaver] Plaintiffs, by unnecessarily delaying this matter, subjecting them to the defense and expense of frivolous claims, as well as further grief, angst and distress. Further, Plaintiffs have incurred significant expense in preparing for trial in a clear liability case when the policy limits should have been offered from day one.

(Ex. B, 3/12/14 Letter from Weaver Plaintiffs' Atty. to Kraft's Atty., ECF No. 63-1 at 19.)

At trial, Kraft admitted negligence. GEICO had retained an attorney to defend Plaintiff in the Underlying Lawsuit. That attorney called no witnesses and employed no experts to testify regarding Ms. Hecker's enhanced injuries, or the standard of care owed by a casual residential landlord in hiring and retention practices. The attorney also did not request a jury instruction concerning the apportionment of fault between joint tortfeasors.

4

On February 17, 2015, the jury returned a verdict in the Underlying Lawsuit in favor of the Weaver Plaintiffs in the amount of $2,623,455.00. Pre and post judgment interest were also awarded by the court. After GEICO's policy limits of $500,000.00 were paid, Plaintiff remains liable for approximately $2,200,000.00 as well as interests and costs.

On November 23, 2016, Plaintiff's counsel moved and was granted permission to withdraw as counsel for Plaintiff in the Underlying Lawsuit.

On May 12, 2017, Plaintiff filed in the Common Pleas Court of Cuyahoga County, Ohio a legal malpractice action against the attorney that represented him in the Underlying Lawsuit.

On August 14, 2017, Plaintiff filed the instant action in the Court of Common Pleas of Franklin County, Ohio against Defendant GEICO alleging breach of contract, bad faith, contractual breach of implied covenant of good faith and fair dealing, tortious breach of the implied covenant of good faith and fair dealing, and unfair trade practices.

On September 15, 2017, GEICO removed the case to this Court. On December 18, 2017, GEICO moved for judgment on the pleadings on all counts. (ECF No. 10.) Once that motion was ripe for review (ECF Nos. 13, 14), this Court granted in part and denied in part GEICO's motion. Specifically, the Court denied the motion with regard to the claim for bad faith, which subsumed the implied covenant of good faith and fair dealing claims, and granted the motion with regard to breach of contract and unfair trade practices.

GEICO has now moved for summary judgment on the remaining claim. That motion is fully at issue.

## II.

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Id.* at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. *See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (the requirement that a dispute be "genuine" means that there must be more than "some metaphysical doubt as to the material facts"). Consequently, the central issue is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234-35 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

## III.

Defendant moves for summary judgment on Plaintiff's bad faith claim based on (A) Plaintiff's alleged failure to raise any genuine issue of material fact as to the claim, and (B) portions of Plaintiff's claims are time barred.

6

### A. Bad Faith

Plaintiff contends that Defendant acted in bad faith when it (1) failed to timely tender the limits of the Policy to the Weaver Plaintiffs, and (2) failed to defend Plaintiff in the Underlying Lawsuit.

An insurance company has a duty to its insured to act in good faith in the handling and payment of claims of the insured. *Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St. 3d 272, 276 (1983). A lack of good faith in the handling and payment of claims by the insurance company could be a basis for a bad faith tort claim against it. *Id.* In a bad faith action, the insurer's liability is not dependent on a breach of the insurance contract. *Gerken v. State Auto Ins. Co.*, No. 13CA14, 2014-Ohio-4428, ¶ 46 (4th Dist. Sept. 8, 2014) (citing *Captain v. United Ohio Ins. Co.*, No. 09CA14, 2010-Ohio-2691, ¶ 22 (4th Dist. 2010)). "'Rather, the liability arises from the breach of the positive legal duty imposed by law due to the relationships of the parties.'" *Gerken*, 2014-Ohio-4428, ¶ 46 (citing *Hoskins*, 6 Ohio St. 3d at 276; *Captain*, 2010-Ohio-2691, ¶ 46).

An insurer is not exposed to a bad faith claim simply because it denied a claim for benefits, acted negligently, or made a bad judgment. *Hoskins*, 6 Ohio St. 3d at 276-77; *see also Rauh Rubber, Inc. v. Berkshire Life Ins. Co.*, No. 98-4122/98-4244, 1999 U.S. App. LEXIS 34043, at *6-7 (6th Cir. Dec. 16, 1999); *Schaller v. Nat'l Alliance Ins. Co.*, 496 F. Supp. 2d 890, 899-900 (S.D. Ohio 2007). Rather, the Ohio Supreme Court uses the "reasonable justification" standard in bad faith cases, regardless of whether the allegations are predicated on the insurer's refusal to pay a claim, refusal to defend its insured against a third-party claim, or other action or inaction in handling the claim. *Gerken*, 2014-Ohio-4428, ¶ 47, 20 N.E.3d 1031 (citing *Captain*, 2010-Ohio-2691, ¶ 29); *see also Zoppo v. Homestead Ins. Co.*, 71 Ohio St. 3d 552, 1994 Ohio 461, 644 N.E.2d 397, paragraph one of the syllabus (1994). An insurer lacks reasonable

7

justification only when it acts in an arbitrary and capricious manner. *Gerken*, 2014-Ohio-4428, ¶ 48, 20 N.E.3d 1031 (citing *Captain*, 2010-Ohio-2691, ¶ 30; *Hoskins*, 6 Ohio St. 3d at 277); *see also Zoppo*, 71 Ohio St. 3d at 554.

With this legal standard in mind, the Court will determine whether the evidence, taken in the light most favorable to Plaintiff, presents a material question of fact about (1) whether Defendant GEICO had a reasonable justification to offer the Policy limits when it did, and (2) whether GEICO engaged in bad faith in its duty to defend Plaintiff in the Underlying Lawsuit.

### 1. Duty to Pay Claims

Plaintiff argues that a reasonable jury could find that the facts present in this case do not provide GEICO a reasonable justification for failure to timely tender its policy limits because there is evidence to show that GEICO knew that the value of the claim far exceeded the Policy limits.

Plaintiff offers testimony from Defendant's Claims Attorney, reflecting that GEICO was going to provide Plaintiff coverage regardless of the outcome of the declaratory action. The Claims Attorney acknowledged that he and his superiors at GEICO familiar with the claim realized immediately that the value of the claim far exceeded Plaintiff's policy limits, testifying:

> Q: . . . So you yourself did not possess authority to make, in this case, a $500,000 offer, is that correct?
>
> A: I can just tell you that once I went to Ed and said there was a death involved, that there was a drunk driver involved, I would not have to really go much farther than that in terms of getting the money.
>
> . . . .
>
> Q: . . . Because you recognized, and Edgar recognized, that there was a death involved of a young mother and a drunk driver involved, obtaining $500,000 the settlement authority was not- I guess there's sort of a no-brainer so to speak.
>
> A: No one would have to have figured out if the case was being handled on a day-to-day basis in such a way that you know, gee did you pick up every defense

8

possible. Once I described the facts of the claim they would have been—yes, that authority needs to be there to be offered at the appropriate time.

(Heiten Dep. at 15–17, ECF No. 55-1.)

Also, in a discussion about the reserves which were set on the case, the Claims Attorney testified:

> Q: . . . I guess what I'm getting at is was there some point when this claim came to your attention and you may have or someone, may have reserved this at say $100,000 or was it immediately reserved at the limits?
>
> A: I believe it was reserved at the limits right away, I believe.
>
> Q: And who set that-who would have set those- that reserve?
>
> A: I think I requested the reserve.

(*Id.* at 19.)

The Claims Attorney was asked specifically why the limits of the policy were not offered right away, since he and his superiors knew from the outset this was a well-beyond limits case. He testified:

> Q: Was there some reason why . . . those policy limits weren't tendered immediately once you became aware of the claim?
>
> A: At the same time, we were aware of the claim we were also aware that there was a coverage issue. And, it was not appropriate to offer the money until we understood how the coverage was going to come out. If Mr. Kraft was not covered- in other words if he wasn't an insured, then all of the money could have been offered on behalf of Mr. Harsh which would have made settlement a whole lot different.
>
> But until we knew who our insureds actually were, we didn't know who we were going to make the offer on behalf of and who we could get released. So, it became difficult.

(*Id.* at 24–5.)

In other words, Defendant posits that it needed to determine whether the $500,000 would be paid on behalf of Plaintiff or Mr. Kraft. Plaintiff, however, highlights that this position does

9

not present a reasonable justification for failure to tender the Policy limits because, first, the Policy was a single-limits policy and was silent on how to apportion insurance proceeds when more than one individual was covered under the policy. So, GEICO could have apportioned the limits any way it saw fit. GEICO did not need a declaratory action to see how to apportion its policy proceeds or "who [GEICO] could get released."

Additionally, Plaintiff provides evidence showing that the other attorneys who reviewed the case, including the Kraft's counsel retained by GEICO, and GEICO's attorney expert, agree that Kraft would have obtained the benefit of any amount paid by GEICO on behalf of Plaintiff as a set-off to their joint and several liability. So, tendering everything on behalf of Plaintiff would not harm Kraft. GEICO's expert testified:

> Q: Had GEICO tendered its policy limits early on on behalf of Mr. Harsh, Mr. Kraft would have still received a setoff for those policy limits if there was a verdict rendered against him at trial, correct?
>
> A: . . . yes, I believe under Ohio law Mr. Kraft would have been entitled to a setoff of the $500,000 paid.

(Richard Williams Dep. at 65–66, ECF No. 61.)

> Similarly, Kraft's attorney testified:
>
> Q: Because this case was tried as a joint and several case, if the entire policy proceeds had been offered on behalf of, say, Mr. Harsh, Mr. Kraft would have still received the benefit of that five hundred thousand dollars in the form of a setoff from the jury verdict, correct?
>
> A: Generally speaking, I would agree with you.

(Hollern Dep. at 110, ECF No.62.)

Further, the GEICO Claims Attorney reviewed the summaries of Plaintiff's and Harsh's depositions taken in the Underlying Lawsuit, and stated that "the permissive use argument is probably gone." (Ex. K, GEICO Internal Claim Notes, ECF No. 63-1 at 84.) Instead of

10

tendering the Policy limit at that time, GEICO waited four more months during which it opposed summary judgment, lost, and filed an appeal.

Last, there is evidence that Plaintiff suffered harmed by GEICO's decision to delay tendering the limits of the Policy to the Weaver Plaintiffs, whose attorney stated in correspondence:

> This letter is written in response to your March 5, 2014 letter, in which Geico offered its $500,000 liability policy limits to settle the [Weaver] Plaintiffs' claims and fully release Charles Harsh and Marc C. Kraft. At this time, the untimely offer of GEICO's policy limits cannot be accepted due to the continuous bad faith actions of GEICO throughout this matter, which affects not only its own insured and covered driver, but also the [Weaver] Plaintiffs. This is a clear liability case. This case was filed on February 11, 2013. Instead of reasonably investigating the critical facts regarding coverage and extending a timely offer of its policy limits, GEICO has engaged in a pattern of unjustified delay . . . .
>
> GEICO failed to make a good faith effort to investigate all aspects of this case before filing its declaratory judgment. In its myopic effort to escape liability, GEICO has blatantly ignored the fact that Mr. Kraft had permission to use [Plaintiff] Harsh's vehicle at the time of the accident. Permission is not and never has been a legitimate issue in this matter. The damages in this clear liability case far exceed GEICO's $500,000 liability limits. Yet, from day one, GEICO has pursued its declaratory judgment with no regard for the facts or the rights of its insured and insured driver.
>
> If GEICO made a good faith effort to investigate all aspects of this case *before* filing its declaratory judgment, the case would not have been delayed. The case would have resolved in the best interest of all parties, including GEICO's own insureds, who now risk personal exposure beyond the policy limits and punitive damages.
>
> GEICO's actions have adversely affected the Plaintiffs, by unnecessarily delaying this matter, subjecting them to the defense and expense of frivolous claims, as well as further grief, angst and distress. Further, Plaintiffs have incurred significant expense in preparing for trial in a clear liability case when the policy limits should have been offered from day one.

(Ex. B, 3/12/14 Letter from Weaver Plaintiffs' Atty. to Kraft Atty., ECF No. 63-1 at 19.)

Defendant maintains that Plaintiff "cannot base a claim for bad faith claim on an insurer's 'litigation tactics and strategy' in a declaratory action" because Ohio law expressly authorizes an

11

insurer to file a declaratory judgment action to ask a court to determine the insurer's contractual obligations under an insurance policy. (Def.'s Mot. for Summ. J. at 22–26, ECF No. 54; Def.'s Reply at 10, ECF No. 68) (citing Ohio Rev. Code §2721.02(A) and *Valley Force Ins. Co. v. Fisher Klosterman, Inc.*, No. 1:14-cv-792, 2016 U.S. Dist. LEXIS 55485, at *12 (S.D. Ohio Apr. 26, 2016)). Defendant continues:

> "The filing of a declaratory judgment action . . . to determine the parties' respective rights and obligations under an insurance policy is permissible and is a procedure that insurers are encouraged to pursue to resolve disputed coverage issues." *Valley Force Ins. Co. v. Fisher Klosterman, Inc.*, No. 1:14-cv-792, 2016 U.S. Dist. LEXIS 55485, at *12 (S.D. Ohio Apr. 26, 2016) (emphasis added). As such, this Court has previously cautioned against allowing a plaintiff to base a claim for bad faith on an insurer's "litigation tactics and strategy" in a declaratory judgment action. *See, e.g., id.* at *33–35; *Helms v. Nationwide Ins. Co. of Am.*, 280 F.R.D. 354, 361–62 (S.D. Ohio 2012).

(Reply at 10–11, ECF No. 68.)

In *Valley Forge*, however, this Court looked at whether the defendant insurance company's "pleadings and motions for summary judgment in th[e] declaratory action" were sufficient "to state a plausible claim for bad faith against Valley Forge." This Court explained that, while "Ohio courts have suggested that the duty of good faith of the insurer does not necessarily end at the time a lawsuit is initiated between the insurer and insured, even if that lawsuit is a declaratory judgment action. . . . many actions of the insurer relating to litigation tactics and strategy can be handled—and are most appropriately handled—by the Court, utilizing the applicable rules of civil procedure." *Valley Forge Ins. Co.*, 2016 U.S. Dist. LEXIS 55485, *33 (citing *Westfield Cos. v. O.K.L. Can Line*, 155 Ohio App. 3d 747, 759-62, 2003 Ohio 7151, 804 N.E.2d 45 (1st Dist. 2003); *Spadafore v. Blue Shield, Ohio Medical Indem. Corp.*, 21 Ohio App. 3d 201, 204, 21 Ohio B. 215, 486 N.E.2d 1201 (10th Dist. 1985)).

12

In the case *sub judice*, the Court is not considering whether Defendant's litigation tactics and strategies in the declaratory action are appropriate bases for a bad faith claim. Instead, the Court is asked to determine whether a bad faith claim can rest on an insurer's decision to withhold the Policy limit payment until after the declaratory action was completed. As to that query, taking the evidence in the light most favorable to Plaintiff and drawing all reasonable inferences in his favor, a reasonable jury could find that in the circumstances present in this case, the decision to hold the Policy limits "to see who [GEICO] could get released" was not a reasonable justification. *See also Spadafore*, 21 Ohio App. 3d at 204 ("In *Roberts v.. Personal Service Ins. Co.* (1983), 12 Ohio App. 3d 92, the court found that acts evidencing a course of conduct disregarding the insurer's duties to its insured do raise an issue of fact for the jury on lack of good faith."). Accordingly, the Court **DENIES** Defendant's Motion for Summary Judgment as it relates to this aspect of Plaintiff's bad faith claim.

### 2. Duty to Defend

Both parties agree that in Ohio, an insurer cannot be held liable in bad faith for the malpractice of its hired outside counsel. *Mentor Chiropractic Ctr. v. State Farm Fire & Cas. Co.*, 139 Ohio App. 3d 407 (11th Dist. 2000). Plaintiff, however, argues that even under this law, GEICO still owes the duties of good faith and fair dealing in defending the claim against its insured, which it cannot delegate. In response, GEICO contends that it cannot be liable for the alleged legal malpractice of the retained attorney, to which its duty to defend is delegated. This Court agrees.

Both parties rely upon *Mentor*, which explained:

> "'We do not accept the claim that vicarious liability falls on one who retains independent trial counsel to conduct litigation on behalf of a third party when retained counsel have conducted the litigation negligently . . . . . In our view independent counsel retained to conduct litigation in the courts act in the capacity

13

of independent contractors responsible for the results of their conduct and not subject to the control and direction of their employer over the details and manner of their performance.

By its very nature the duty assumed by [the insurance company] to defend its insured against suits must necessarily be classified as a delegable duty, understood by all parties as such, for [the insurance company] had no authority to perform that duty itself and, in fact, was prohibited from appearing.' (Citations omitted.)" *Junction Auto Sales v. Universal Underwriters Ins. Co.*, 1991 Ohio App. LEXIS 5323, *11 (Nov. 8, 1991), Geauga App. No. 90-G-1587, unreported, 1991 WL 233832, quoting *Merritt v. Reserve Ins. Co.* (1973), 34 Cal. App. 3d 858., 110 Cal. Rptr. 511.

*Mentor*, 139 Ohio App.3d at 412 (omissions in original).

Consequently, the Court **GRANTS** Defendant's Motion for Summary Judgment as it related to bad faith in the duty to defend.

**B.     Statute of Limitations**

The statute of limitations for a bad faith claim is governed by the Ohio Revised Code § 2305.09(D). GEICO argues that Plaintiff cannot base his bad faith claim on any alleged actions/inactions arising before August 9, 2013 because this lawsuit was filed on August 9, 2017. "GEICO does not contend that the statute of limitation bars *all* aspects of Plaintiff's claim for bad faith. Rather, GEICO maintains that Plaintiff cannot, as a matter of law, base his claim for bad faith on any alleged actions or inactions that occurred *before* August 9, 2013." (Def.'s Mot. at 5, 31, ECF No. 54.)

The Court, however, finds that the portion of the bad faith claim that has survived Defendant's Motion for Summary Judgment has its bases in numerous events that occurred after August 9, 2013, including GEICO's decision to continue litigating the permissive user defense when its claims attorney assessed the defense as lost. The admission of certain evidence will be addressed as this case works up for trial.

14

## IV.

For the foregoing reasons, Defendant's Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART** in accordance with this Opinion and Order. (ECF No. 54)

**IT IS SO ORDERED.**

\_\_\_5-2-2019_____
**DATED**

_____
**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**